UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVILLION WARD,<br><br>    Plaintiff,<br><br>v.<br><br>CRAIG KOENIG,<br><br>    Defendant. | Case No. 21-cv-09741-JST<br><br>**ORDER SCREENING AMENDED COMPLAINT; RESETTING BRIEFING SCHEDULE**<br><br>Re: ECF No. 24 |

    Plaintiff, an inmate at Correctional Training Facility ("CTF"), filed a *pro se* action in Monterey County Superior Court. His amended complaint (ECF No. 24) is now before the Court for screening pursuant to 28 U.S.C. § 1915A.

**DISCUSSION**

**A.    Standard of Review**

    A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement does not suffice. *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Procedural History**

In screening the initial complaint, the Court made the following findings.

The Court found that the initial complaint's allegation that the following CTF conditions – unsanitary conditions, lack of social distancing, unmasked correctional officers, and a cell move during the pandemic to a cell that was not sanitized – exposed Plaintiff to COVID-19 and ultimately caused him to contract COVID-19 stated a cognizable Eighth Amendment claim against defendant Koenig for both deliberate indifference to inmate safety and to Plaintiff's serious medical needs.  The Court dismissed with prejudice the claims against defendants Mensing and Gates for their involvement in the grievance process; the supervisory liability claim against defendant Mensing; the Eighth Amendment claim arising out the failure to transfer Plaintiff away from CTF in 2018, 2019, and 2020; the Eighth Amendment claim against defendant Turingan for cuffing Plaintiff to his medical bed; and the claim for damages against defendant Koenig in his official capacity.  The Court dismissed Doe Defendants 1-11 without prejudice.  The Court dismissed with leave to amend the Eighth Amendment claim that that defendant Koenig introduced COVID into CTF by approving the July 20, 2020 Goon Squad assault on 200+ African American inmates because the initial complaint's allegations were too conclusory to link defendant Koenig to the July 20, 2020 assault.  *See generally* ECF No. 19.

**C.     Amended Complaint**

The amended complaint names CTF warden Craig Koenig as the sole defendant.

The amended complaint makes the following allegations.

2

On September 19, 2018, August 30, 2019, and August 18, 2020, CTF's Classification Committee endorsed Plaintiff for transfer away from CTF based on his high risk medical conditions that include cirrhosis of the liver, pre-diabetes, obesity, arthritis, and other "mental maladies." ECF No. 24 at 6. Plaintiff was not transferred. *Id.* By March 11, 2020, CDCR officials, including defendant Koenig, were aware that COVID-19 was a serious health risk to its employees and inmate populations. From March thru July 2020, the CDCR promulgated numerous COVID-19 safety protocols and procedures and informed staff and inmates about these protocols and procedures via memos and emails. Between May 28 to May 30, hundreds of inmates were transferred from California Institute for Men ("CIM") to San Quentin State Prison ("SQSP") and Corcoran State Prison ("CSP"), and from SQSP to High Desert State Prison ("HDSP") without first obtaining current COVID testing results. The result was an outbreak of COVID-19. On May 28, 2020, CDCR secretary Ralph Diaz sent out a memo detailing racist and distasteful jokes and comments made by certain CDCR employees denigrating George Floyd and Floyd's family. The Black Lives Matter movement was achieving national attention at this time, exacerbating the entrenched racial hatred and white supremacy that was an unspoken but accepted norm among CDCR administrators and employees.

Given this context, defendant Koenig's decision to authorize the July 20, 2020 raid that targeted African American inmates and his decision to not require the use of personal protective equipment was clearly intended to spread COVID to African American inmates. On July 20, 2020, Plaintiff witnessed masked and unmasked correctional officers violently assaulting numerous African American inmates in D housing unit under the guise of conducting a raid. The correctional officers brutally assaulted the inmates, handcuffed them, and dragged them out of their beds in just their boxer briefs and slippers and without their face masks. Plaintiff heard a correctional officer say, "Black lives don't matter in prison," followed by laughter from other officers. Plaintiff was extremely anxious and fearful for his safety, fearing that he might be targeted by correctional officers because of his race. Inmates targeted during the raid stated that the guards repeatedly referred to them with racial epithets, stated that they didn't care about COVID, and stated that Black Lives Don't Matter. Inmate Brown, one of the inmates targeted in

3

1  the raid, contracted COVID approximately ten days later.  Soon thereafter, COVID spread to two

2  other inmates in D-Wing, with one of the inmates dying from COVID-19 on August 20, 2022.

3  ECF No. 24 at 7, 13-21.

4        On August 1 and 3, 2020, Plaintiff filed emergency grievances regarding staff members

5  not wearing face masks and the fear he experienced from witnessing the July 20, 2020 assault.

6  Plaintiff requested immediate release due to his high risk for death or COVID infection.  These

7  grievances were ultimately denied.  ECF No. 24 at 7-8.

8        From July 20 to November 5, Plaintiff was tested regularly for COVID and tested negative

9  each time.  ECF No. 24 at 7.

10       By October 2020, COVID had spread from D-Wing into C, B, E, F, and G-Wing.

11       On November 5, 2020, Plaintiff was instructed to move cells and denied the opportunity to

12 clean or disinfect his new cell before moving in.  Plaintiff received no COVID-19 test between

13 November 5 and November 17.  ECF No. 24 at 8.

14       On November 17, 2020, Plaintiff tested positive for COVID.  On November 19, 2020,

15 Plaintiff collapsed in the shower.  Plaintiff was taken to the medical Triage and Treatment Area

16 ("TTA") where he was told that he "just dehydrated," and given water and an intravenous saline

17 solution.  Afterwards, Plaintiff was taken to G-Wing Cell 127 for isolation.  On November 20,

18 2020, after taking Plaintiff's vitals, Dr. Kathryn Rios sent Plaintiff for treatment to an outside

19 hospital.  Plaintiff was admitted to Natividad Hospital and treated for COVID-19 pneumonia.

20 Plaintiff was discharged on November 23rd.  Plaintiff returned to G-Wing Cell 127 for isolation

21 and was provided with an oxygen machine and instructions to perform daily breathing exercises.

22 Despite these treatments, Plaintiff has not recovered his former lung capacity.  ECF No. 24 at 8-9.

23 Sometime later, Plaintiff learned that his former cellmate was also in isolation because he had

24 tested positive for COVID-19 at the same time as Plaintiff.  ECF No. 24 at 9.

25       On March 2, 2022, Plaintiff tested positive for COVID-19 again.  He continues to suffer

26 long-term health effects from the COVID infections.  His pre-existing medical conditions –

27 cirrhosis of the liver, prediabetes, obesity, arthritis, mobility impairment, and other issues – have

28 been significantly aggravated by the two COVID infections; and he now requires ADA

United States District Court
Northern District of California

1  accommodations to perform simple tasks.  Plaintiff's current health issues are the direct result of
2  (1) the refusal to transfer Plaintiff away from CTF in 2018 and 2019; and (2) the July 20, 2020
3  raid.

**D.     Legal Claims**

The amended complaint alleges the following legal causes of action.

The first cause of action is titled "Eight Amendment Violation – Deliberate Indifference Causing Injury to Health and Safety – Disease" and alleges that defendant Koenig planned, initiated, and personally oversaw the June 22, 2020 raid on African American inmates; that defendant Koeing either intended for the raid to be a COVID super-spreader, or knew that the raid would be a COVID super-spreader; and this raid was the direct or proximate cause of Plaintiff's COVID infections and subsequent serious health issues.  Liberally construed, this allegation states a cognizable Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs and safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison official is deliberately indifferent in violation of Eighth Amendment if he knows that prisoner faces substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it).

The second cause of action is titled "Racist Violation of Bane Act" and alleges that the July 20, 2020 raid targeting African American inmates, and the racial slurs and threats made by officers during the raids, violated the Bane Act.  Plaintiff alleges that he was traumatized psychologically and emotionally from witnessing the raid, and contracted COVID because of the raid.  Cal. Civ. Code § 52.1, known as the Bane Act, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).  The elements of a Bane Act claim are: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him; (3) the defendant injured the plaintiff to prevent him from exercising his constitutional right; (4) the plaintiff was harmed; and (5) the defendant's actions were a substantial factor in causing the plaintiff's harm.  *Austin B. v. Escondido Union Sch.*

5

*Dist.,* 149 Cal. App. 4th 860, 882 (2007) (citing California's model Bane Act instruction, CACI Instruction No. 3066). The second cause of action fails to state a cognizable Bane Act claim. Defendant Koenig's authorization of the raid was not an interference, or an attempt to interfere, with Plaintiff's exercise of a constitutional or statutory right. Plaintiff does not allege that he was exercising, attempting to exercise, or intending to exercise, any constitutional right at the time of the raids. This claim is DISMISSED with leave to amend.

The third cause of action is titled "Weaponization of Disease." It is unclear what the legal basis for this claim is, i.e., what statutory or constitutional federal right or law was violated or what state-law right was violated. To the extent that Plaintiff is alleging that defendant Koenig weaponized COVID in order to cause Plaintiff to contract COVID, this states a claim for violation of the Eighth Amendment right to be free of deliberate indifference to his safety or serious medical needs. The Court has already found that the amended complaint states a cognizable Eighth Amendment claim. This claim is therefore DISMISSED with leave to amend.

The fourth cause of action is titled "Intentional Infliction of Emotional Distress" and alleges that defendant Koenig was personally involved in the July 20, 2020 raid; that the raid knowingly and intentionally targeted African American inmates and was a manifestation of the entrenched hostility towards African American inmates; and that the raid caused Plaintiff significant emotional trauma. Liberally construed, this allegation states a cognizable state law tort claim for intentional infliction of emotional distress. *Christensen v. Sup. Ct.*, 54 Cal.3d 868 (1991) (elements of intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct).

The fifth cause of action is titled "Negligent Supervision" and alleges that defendant Koenig authorized the July 20, 2020 raid despite knowing that the manner in which it was carried out would result in a COVID superspreader event. Liberally construed, these allegations state a cognizable state law tort claim for negligent supervision. *Brown v. City of Clovis*, No. 119CV00465LJOSAB, 2019 WL 3231734, at *8 (E.D. Cal. July 18, 2019) (elements for

California state tort claim for negligent supervision are (1) legal duty to use reasonable care, (2) breach of that duty, (3) proximate cause between breach and (4) plaintiff's injury, and (5) facts that employer knew or should have known created a particular risk or hazard and that particular harm materializes) (citing to *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (Cal. Ct. App. 1998) and *Doe v. Capital Cities*, 50 Cal.App.4th 1038 (Cal. Ct. App. 1996)).

## CONCLUSION

For the foregoing reason, the Court orders as follows.

1. As specified above, the amended complaint states a cognizable claim for violation of the Eighth Amendment prohibition on deliberate indifference to an inmate's serious medical needs and safety; and cognizable claims for the state law torts of intentional infliction of emotional distress and negligent supervision. The Court dismisses with leave to amend the Bane Act claim as well as the claim titled "weaponization of disease."

2. If Plaintiff wishes to file a second amended complaint that addresses the identified deficiency noted above, Plaintiff must file a second amended complaint within twenty-eight (28) days of the date of this order. The second amended complaint must include the caption and civil case number used in this order, Case No. C 21-09741 JST (PR) and the words "SECOND AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. An amended complaint completely replaces the previous complaints. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012). Accordingly, Plaintiff must include in his second amended complaint all the claims he wishes to present and all of the defendants he wishes to sue, including the defendant(s) already served and the claims found cognizable below. Plaintiff may not incorporate material from the prior complaint by reference. Failure to file a second amended complaint in accordance with this order in the time provided will result in ECF No. 24 remaining the operative complaint, and this action proceeding solely on the claims found cognizable above. The Clerk shall include two copies of the court's complaint form with a copy of this order to Plaintiff.

3. Within thirty-five (35) days of the date of this order, defendant Koenig shall file a response to the complaint unless Plaintiff files a second amended complaint. If Plaintiff files a

second amended complaint, defendant Koenig need not answer the second amended complaint until after the Court has screened the second amended complaint.

4. The Court resets the briefing schedule as follows.

    a. No later than 91 days from the date this order is filed, Defendant must file and serve a motion for summary judgment or other dispositive motion. If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[1]

    b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. Defendant shall file a reply brief no later than 14 days after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

5. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing

---

[1] If Defendant asserts that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).  (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment.  *Woods*, 684 F.3d at 939).

      6.    All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until Defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendant, but once Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to Defendant.

      7.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

      8.    Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

      9.    Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.  Plaintiff is cautioned that

/ / /

/ / /

1  he must include the case name and case number for this case on any document he submits to the
2  Court for consideration in this case.
3  **IT IS SO ORDERED.**
4  Dated:  October 23, 2023



JON S. TIGAR
United States District Judge