UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVILLION WARD,<br><br>   Plaintiff,<br><br> v.<br><br>CRAIG KOENIG,<br><br>   Defendant. | Case No. 21-cv-09741-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; SETTING BRIEFING SCHEDULE**<br><br>Re: ECF No. 32 |

Plaintiff has filed this *pro se* civil rights action against former Correctional Training Facility ("CTF") warden Craig Koenig. ECF Nos. 24, 29. Now pending before the Court is Defendant's motion for summary judgment for failure to exhaust administrative remedies. ECF No. 32. Plaintiff has filed an opposition. ECF No. 36. Defendant has not filed a reply, and the deadline to do so has since passed. For the reasons set forth below, the Court DENIES Defendant's motion for summary judgment and sets a briefing schedule for a dispositive motion on the merits.

**DISCUSSION**

**I. Background**

 **A. Complaint**

The complaint makes the following relevant factual allegations. By July 20, 2020, defendant Koenig was aware that COVID-19 was a serious health risk to staff and inmates; that the number of staff and inmate COVID-19 infections was rising; and that containing the potential spread of COVID-19 within CTF required social distancing, minimizing needless inmate movement, and use of masks, protective gear, and gloves. Despite this knowledge, defendant

1    Koenig authorized a raid on July 20, 2020, referred to as Operation Akili, which targeted African
2    American inmates in CTF D-Wing, either with the intent to intentionally infect African American
3    inmates with COVID-19, or with knowledge of, but without concern for, the high likelihood that
4    that the raid would spread COVID-19 among the inmates targeted by the raid.  The officers
5    carrying out the raid were both masked and unmasked, and inmates heard the officers state they
6    didn't care about COVID-19.  One of the inmates targeted in the raid contracted COVID-19
7    approximately ten days later.  Soon thereafter, COVID-19 spread to two other inmates in D-Wing,
8    with one of the inmates dying from COVID-19 on August 20, 2022.  By October 2020, COVID-
9    19 had spread from D-Wing into C, B, E, F, and G-Wing.  On November 17, 2020, Plaintiff tested
10   positive for COVID-19 and ultimately contracted COVID-19 related pneumonia.  On March 2,
11   2022, Plaintiff contracted COVID-19 again.  Plaintiff continues to suffer long-term effects from
12   his COVID-19 infections.  His lung capacity is permanently reduced; his pre-existing medical
13   conditions—cirrhosis of the liver, prediabetes, obesity, arthritis, mobility impairment, and other
14   issues—have been significantly aggravated by the two COVID-19 infections; and he requires
15   ADA accommodation to perform simple tasks.  The operative complaint seeks the following
16   relief: a release order, a transfer order,[1] a declaratory finding of Defendant Koenig's liability,
17   damages, and civil penalties.  *See generally* ECF No. 24.

18   The Court found that these factual allegations stated cognizable claims for violation of the
19   Eighth Amendment prohibition on deliberate indifference to an inmate's serious medical needs
20   and safety; and cognizable claims for the state law torts of intentional infliction of emotional
21   distress and negligent supervision.  *See generally* ECF No. 29.

22   **B.     CDCR Administrative Grievance Process**

23   The California Department of Corrections and Rehabilitation ("CDCR") provides its
24   inmates and parolees the right to administratively grieve and appeal any "policy, decision, action,
25   condition, or omission by the [California Department of Corrections and Rehabilitation]or
26   departmental staff that causes some measurable harm to their health, safety, or welfare."  15 Cal.

---

[1] The requests for release from custody in a CDCR facility may now be moot.  It appears that Plaintiff has been released from prison.  ECF No. 38.

1    Code Regs. § 3481(a) (eff. June 1, 2020).[2]

2          For non-healthcare grievances by inmates, there are two levels of review. At the first level, the inmate submits his claim on a CDCR Form 602-1 to the Institutional Office of Grievances at the prison where he is housed. 15 Cal. Code Regs. § 3482(a)(1), (c). In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge." *Id.* at § 3842(c)(2). "In response, [the inmate] shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a). This written decision, referred to as a first level decision, does not exhaust administrative remedies. *Id.* at § 3483(l). If an inmate is dissatisfied with the first level decision, the inmate may appeal the decision to the second level by submitting a CDCR Form 602-2 to the CDCR's Office of Appeals in Sacramento within 30 days of receiving the first level decision. *Id.* at §§ 3481(a), 3485(a). The Office of Appeals shall ensure that a written decision is completed no later than 60 calendar days after receipt of the grievance. *Id*. at § 3485(g). The written decision shall clearly explain the reasoning for the decision in each claim. *Id.* at § 3481(a). A written decision containing one of the following decisions – "denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired" – constitutes exhaustion of the administrative remedy process. *Id*. at § 3485(l). "Time Expired" means that the Office of Appeals was not able to respond to the grievance within 60 calendar days, resulting in the first level decision serving as the department's final decision. *Id.* at § 3485(g)(10).

      The healthcare grievance process is similar and also consists of two levels of review. At the first level, the inmate submits his claim by filling out Section A of the Form CDCR 602 HC to the Health Care Grievance Office ("HCGO") of his institution. 15 Cal. Code Regs. § 3999.227(b).

---

[2] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with the renumbered and amended provisions at sections 3480 through 3487.

3

1   In Section A, the inmate is required to "document clearly and coherently all information known
2   and available to him or her regarding the issue," including "any involved staff member's last
3   name, first initial, title or position, and the date(s) and description of their involvement." 15 Cal.
4   Code Regs. § 3999.227(g). If the inmate does not have information to identify the involved staff
5   member(s), the prison regulations instruct the inmate to "provide any other available information
6   that may assist in processing the health care grievance." 15 Cal. Code Regs. § 3999.227(g)(2).
7   The HCGO shall process the grievance and return it to Plaintiff within 45 business days after the
8   grievance is received. 15 Cal. Code Regs. § 3999.228(i). If an inmate is dissatisfied with the first
9   level / HCGO decision, the inmate may appeal the decision to the second level by completing and
10  signing Section B of the CDCR Form 602 HC, and submitting the appeal to the Health Care
11  Correspondence and Appeals Branch ("HCCAB") within 30 calendar days plus five calendar days
12  for mailing from the date noted on the CDCR 602 HC, in the "Date closed and mailed/delivered to
13  grievant" section on page 1 of 2. 15 Cal. Code Regs. § 3999.229(a). The HCCAB review
14  constitutes the final disposition on a health care grievance and exhausts administrative remedies.
15  15 Cal. Code Regs. § 3999.230(h). Prisoners cannot add new claims during the grievance process.
16  15 Cal. Code Regs. § 3999.229(a)(3). However, the HCCAB may, in its discretion, address new
17  issues not previously submitted or included in the original health care grievance. 15 Cal. Code
18  Regs. § 3999.230(i). A headquarters / HCCAB level disposition addressing new issues exhausts
19  administrative remedies. 15 Cal. Code Regs. § 3999.230(j). Only issues addressed in the
20  headquarters / HCCAB level review are deemed exhausted. 15 Cal. Code Regs. § 3999.230(i)–(j).

### C. Grievance No. 24015

On July 31, 2020, Plaintiff submitted an emergency grievance (CDCR Form 602), Grievance No. 24015, that raised the following issue:

> Since the inception of the COVID-19 pandemic, I have witnessed countless instances of CTF officers and staff personnel NOT wearing face masks. In fact, there had already been several documented instances of CTF personnel infecting inmates in this facility. This presents a serious risk of Corona Virus infection for me, and I know for certain that I am in eminent danger of contracting this disease. I am a 59 year old, African American man who has been diagnosed with liver disease, type two diabetes, obesity, and a host of other health complications. As such, I am a

4

> high risk candidate for death if I contract this deadly disease. The July 20th ISU assault on Black inmates that I witnessed was very disturbing, and only served to confirm my belief that certain administrators are contemptuous of Black inmates, and have little to no ability to control the actions of rogue officers who blatantly disregard the face mask requirement (and rights) of African American inmates. This has caused me much anxiety, fear, and depression over the fact that I could easily contract the virus in this environment under hostile conditions. For fear of exposure, I am now afraid to leave my cell or make contact with other people. The overcrowded conditions and the unconstitutionally small – 2 man – cells make any kind of social distancing impossible. I fear that I might actually die of COVID-19 as a result of the blatant disregard and careless actions of CDCR personnel.

ECF No. 32-2 at 18, 20. Grievance No. 24015 requested the following relief:

> I request that I be tested for the COVID-19 infection, and that I be immediately released under Cal. Gov. Code § 8658. There is no way for CDCR to protect me from this deadly virus in any prison. I am an elderly man with numerous medical conditions and mobility problems that require chronic medical care. I am low risk to public safety, and have housing available for me in Sacramento with my adult children, who will provide stability and support. I also request temporary single cell status until my release is granted.

ECF No. 32-2 at 18, 20.

On September 11, 2020, Plaintiff received a response to Grievance No. 24015 from Associate Deputy Warden ("ADW") Mensing, which denied the grievance. ECF No. 32-2 at 15. The response described Grievance No. 24015's claim as follows:

> The claimant claims since the inception of the COVID-19 pandemic he has witnessed countless staff member not wear facial covering at the Correctional Training Facility (CTF). The claimant alleges there has been several documented instances wherein CTF staff have infected inmates at CTF, presenting a serious risk of contracting COVID-19 to the claimant. The claimant claims he is a fifty-nine year old African American who has been diagnosed with liver disease, Type-II diabetes, obesity which makes him a high risk for death if he contracts COVID-19. The claimant alleges his observation of the July 20, 2020 assault on Black inmates was very disturbing and confirmed his belief that CTF Administrators are contemptuous of Black inmates and do not have the ability to control the actions of rogue officers who blatantly disregard the face mask requirement as well as the rights of African American inmates. The claimant claims this has caused him anxiety, fear, and depression over the fact he could easily contract COVID-19 in these hostile conditions. The claimant further claims he now fears to leave his cell or make contact with people, as the overcrowded conditions make social distancing impossible. The claimant further claims he fear he may die of COVID-19 as a result of the blatant disregard and careless actions of California Department of Corrections and Rehabilitation personnel. Based on these claims,

5

> the claimant requests he be tested for COVID-19, immediately released from prison and be placed on Single Cell Status until he is released due to his medical condition.

ECF No. 36 at 14. In denying the grievance, ADW Mensing stated that CTF staff are in compliance with the face mask requirement; stated that Plaintiff was ineligible for release pursuant to Cal. Gov't. Code § 8658 due to his current case factors; and described CTF's efforts to mitigate the spread of COVID-19. ECF No. 36 at 14-15.

On September 24, 2020, Plaintiff appealed the first level denial of Grievance No. 24015 as follows:

> On September 3, 2020, G-Wing was quarantined due to two (2) inmates who tested positive for the COVID-19 virus. Previous to that, no one in the wing had the virus. Consequently, the virus had to have come from an outside source, which was most likely a CTF staff. This occurrence has confirmed the fact that no directive, memorandum, guideline, or authority can protect me from the COVID-19 infection in prison. The rhetoric in the response is of no substance and only adds to the facade of institutionalized denial that already prevents the administration from humanely and effectively addressing this seriously high-risk health issue that disproportionately effects African-American men like me.

ECF No. 36 at 12.

On December 5, 2020, the Office of Appeals issued a "time expired" decision on Grievance No. 24015, acknowledging that Grievance No. 24015 had been received on October 5, 2020. The Office of Appeals categorized Grievance No. 24015 as grieving "COVID-19, Social Distancing." ECF No. 36 at 11.

### D.  Grievance No. HC20000628

On August 3, 2020, Plaintiff submitted healthcare grievance, numbered Grievance No. HC2000628 which set forth the following claim:

> I am a 59-year old, African American male who has been diagnosed with liver disease, type 2 diabetes, obesity, and numerous other health conditions that make me a high risk for COVID-19 infection and/or death. The virus is current in this facility and there is no way CDCR can protect me from contracting this deadly virus, which now poses an eminent threat to my health and safety. As a result, I request an immediate release under Cal. Gov. Code § 8658, due to the eminent threat of death posed by the COVID-19 virus currently spreading throughout CDCR. This appeal also serves as Notice of Suit in the event I contract and/or die from the COVID-19 virus.

ECF No. 36 at 27.

6

1       On October 5, 2020, Plaintiff received an institutional level response signed by CTF Chief
2   Medical Executive Steve Posson.  The response characterized the issue grieved as "Non-
3   Medical/Custody (Medical Parole)" and described the issue as "Release due to COVID-19 19 and
4   underlying medical conditions."  The response denied the relief requested, stated that Plaintiff was
5   "receiving continuing care for the management of [his] chronic issues as determined medically
6   necessary by [his] Primary Care Physician;" reviewed how the CDCR determines an inmate's
7   COVID-19 Risk Score; and informed Plaintiff that he would be notified if he were determined to
8   be eligible for release.  ECF No. 35-36.

        On October 27, 2020, Plaintiff appealed the institutional level decision as follows:

> I am dissatisfied with the grievance response for the following reasons: (1) it failed to disclose my COVID-19 Risk Score based on my particular health conditions; (2) the Risk Score does not include an assessment of my mental health (CCCMS) conditions; (3) COVID-19 has infected numerous inmates living in the same wing as me; (4) there is absolutely no possibility of implementing social distancing in prison; (5) CDCR is still transferring and receiving inmates from other institutions; and (6) Correctional Officers are regularly and openly disregarding the requirement to wear face masks at all times.  These risk factors are well known to be the reason for the current spread of the virus, but are being systematically ignored in order to maintain the financial incentives of mass incarceration.  To deny my release is not just cruel and unusual, but it is a deliberate indifference to my physical and mental health for the sake of profit.

ECF No. 26 at 28.

        On February 4, 2021, Plaintiff received a Headquarters' Level response to Grievance No. HC2000628.  The response described the issues being grieved as "Grievances (Grievance Status): "Emergency" processing" and "COVID-19 (Expedited Release): Immediate Release due to COVID-19 concerns."  ECF No. 36 at 22.  The response denied the request for expedited processing of the grievance and the request for release.  The response informed Plaintiff that his current COVID-19 Risk Score was 4, and that he would be notified if he were determined to be eligible for release.  The response also reviewed COVID-19 related mitigation measures in place at CDCR facilities.  ECF No. 36 at 22-24.

# DISCUSSION

## I. Defendant's Summary Judgment Motion for Failure to Exhaust Administrative Remedies

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's

1  function on a summary judgment motion is not to make credibility determinations or weigh

2  conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

### B.     Exhaustion

The PLRA sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 218.

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (alteration in original); *see Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.")

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 216. The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1171-72 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. That is, the burden shifts to

the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### C. Analysis

Defendant argues that Plaintiff did not exhaust his administrative remedies for his claims in this action because the grievances identified above did not refer to defendant Koenig or allege wrongdoing on defendant Koenig's part. Defendant argues that these grievances therefore failed to comply with prison regulations requiring the inmate to identify all staff members involved in the event and also failed to alert the prison to Plaintiff's concern that defendant Koenig approved a raid that he knew would be a COVID-19 superspreader. *See generally* ECF No. 32. In response, Plaintiff argues that Defendant's summary judgment motion should be denied because Plaintiff complied with the application prison regulations in that he included all the information known to him at the time he filed the grievances. Plaintiff states that he did not know of defendant Koenig's involvement in the raid until March 2021, after the review process for both grievances had been completed. Plaintiff learned of defendant Koening's article in March 2021 when he read the article, "2020 Soledad raid on Black prisoners hits the courtroom," in the March 2021 issue of the San Francisco Bay View. The article reported that a lawsuit had been filed by Pavone & Fonner LLP against CTF officials regarding the July 20, 2020 raid and that the complaint alleged the following:

- ". . . on July 20, 2020, the warden of the California Correctional Training executed a 3 a.m. raid, dubbed 'Operation Akili,' with the intent to injure, infect, terrorize, provoke and humiliate a large number of sleeping African American inmates."

- ". . . CDCR agents at the same time elected to weaponize the COVID-19 virus by intentionally exposing a mass number of the inmates to each other and to the guards who had just assaulted the without any protection or social distancing."

10

- "This predictably and by design became a 'superspreader' event, ultimately resulting in some 2,700 subsequent cases of COVID-19 infection traceable to it, including 17 deaths at this prison."

ECF No. 36 at 30. Defendant Koenig does not dispute Plaintiff's claim that Plaintiff was unaware of defendant Koenig's involvement in the July 20, 2020 raid until March 2021, and has not filed a reply brief in support of his motion for summary judgment for failure to exhaust administrative remedies.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has exhausted his administrative remedies with respect to the claims raised in this action. Defendant does not dispute that Grievance Nos. 24015 and HC20000628 exhausted the substance of the claims raised in this action, namely that CTF officials allowed or authorized behavior that they knew would cause the spread of COVID-19 at CTF, including the July 20, 2020 raid. Both Grievance Nos. 24015 and HC20000628 comply with prison regulations in that Plaintiff provided all the information known and available to him at the time of filing. 15 Cal. Code Regs. § 3482(c)(2) (non-healthcare grievance) (inmate "shall . . . describe all information *known and available to the [inmate]* regarding the claim, including . . . names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, *to the best of the [inmate's] knowledge*") (emphasis added); 15 Cal. Code Regs. § 3999.227(g) (healthcare grievance) (inmate "shall document clearly and coherently all information *known and available to him* or her regarding the issue . . . [including] any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. If the [inmate] does not have information to identify the involved staff member(s), the [inmate] shall provide any other available information that may assist in processing the health care grievance.") (emphasis added). Defendant has not disputed, or otherwise challenged, Plaintiff's assertion that he was unaware of defendant Koenig's involvement until March 2021, which is after both grievances had completed the review process. Accordingly, Plaintiff's failure to name defendant Koenig in Grievance Nos. 24015 and HC20000628 does not constitute a failure to exhaust. Moreover, Grievance Nos. 24015 and HC20000628 sufficed to exhaust Plaintiff's administrative remedies because they alerted the prison to the nature of the wrong – deliberately or recklessly exposing

11

Plaintiff and other inmates to COVID via the July 2020 raid – and included sufficient information to allow prison officials to take appropriate responsive measures. *Griffin*, 557 F.3d at 1120; *see, e.g. Reyes v. Smith*, 810 F.3d 654, 658-59 (9th Cir. 2016) (plaintiff's claim exhausted as to prison doctors named in federal action where grievance plainly put prison officials on notice of nature of wrong alleged in federal action – denial of pain medication by defendant doctors—and prison officials easily identified named prison doctors' involvement in the issue). Even if Grievance Nos. 24015 and HC20000628 failed to comply with a procedural rule, they are exhausted because prison officials decided these grievances on the merits at all available levels of administrative review. *Reyes*, 810 F.3d at 656-58. Accordingly, the Court DENIES Defendant's motion for summary judgment for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. The Court DENIES Defendant's motion for summary judgment for failure to exhaust administrative remedies. ECF No. 32.

2. The Court sets the following briefing schedule for a dispositive motion on the merits. No later than 91 days from the date this order is filed, Defendant must file and serve a motion for summary judgment or other dispositive motion regarding the merits of this action. If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due. A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than 28 days from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Defendant shall file a reply brief no later than

1   14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date

2   the reply brief is due.  No hearing will be held on the motion.

3          3.       Plaintiff is advised that a motion for summary judgment under Rule 56 of the

4   Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must

5   do in order to oppose a motion for summary judgment.  Generally, summary judgment must be

6   granted when there is no genuine issue of material fact – that is, if there is no real dispute about

7   any fact that would affect the result of your case, the party who asked for summary judgment is

8   entitled to judgment as a matter of law, which will end your case.  When a party you are suing

9   makes a motion for summary judgment that is properly supported by declarations (or other sworn

10  testimony), you cannot simply rely on what your complaint says.  Instead, you must set out

11  specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,

12  as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and

13  documents and show that there is a genuine issue of material fact for trial.  If you do not submit

14  your own evidence in opposition, summary judgment, if appropriate, may be entered against you.

15  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v.*

16  *Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does

17  not excuse Defendant's obligation to serve said notice again concurrently with a motion for

18  summary judgment.  *Woods*, 684 F.3d at 939.)

19         This order terminates ECF No. 32.

20         **IT IS SO ORDERED.**

21  Dated:  August 5, 2024

                                                  JON S. TIGAR
                                           United States District Judge